263 P.3d 92 (2011)
Trina GARCIA, individually and on behalf of all persons similarly situated, Petitioner
v.
MEDVED CHEVROLET, INC., d/b/a Medved Cadillac, Inc., d/b/a Medved Cadillac Oldsmobile, Inc., d/b/a Medved Chevrolet-GEO, Inc., d/b/a Medved Oldsmobile, Inc. and d/b/a Medved Craig Chevrolet, Inc.; Medved Chevrolet South, Inc., d/b/a Medved Hummer South; Castle Rock Ford-Mercury, Inc., d/b/a Medved Ford Lincoln Mercury, Inc. and d/b/a Medved Brutyn Ford Lincoln Mercury, Inc.; Medved Buick Pontiac GMC, Inc.; Lakewood Chrysler-Plymouth, Inc., d/b/a Medved Chrysler Jeep, Inc.; Medved Chrysler Jeep Dodge South, Inc.; Medved Chrysler Jeep Dodge, Inc.; Medved Pontiac Buick GMC, Inc.; Medved Suzuki North, Inc.; Medved Suzuki South, Inc.; and John Medved, individually, Respondents.
No. 09SC1080.
Supreme Court of Colorado, En Banc.
October 31, 2011.
*93 Friesen Lamb, LLP, Daniel E. Friesen, Denver, Colorado, Attorneys for Petitioner.
Reilly Pozner LLP, Daniel M. Reilly, Eric Fisher, Caleb Durling, Laurie Jaeckel, Denver, Colorado, Holley, Albertson & Polk P.C., Dennis B. Polk, Golden, Colorado, Attorneys for Respondents.
Hill & Robbins, P.C., Robert F. Hill, John H. Evans, Nathan P. Flynn, Denver, Colorado, McFarland Law Offices, Thomas D. McFarland, Golden, Colorado, Attorneys for Amicus Curiae The Colorado Trial Lawyers Association.
Kelly Garnsey Hubbell & Lass, LLC, William E. Walters, III, Denver Colorado, Attorneys for Colorado Automobile Dealers Association.
*94 Mountain States Legal Foundation, Joel M. Spector, Lakewood, Colorado, Deborah J. La Fetra, Sacramento, California, Attorneys for Amicus Curiae Pacific Legal Foundation.
Justice MARTINEZ delivered the Opinion of the Court.
Consumers brought a class action against ten automobile dealerships operating under the Medved name,[1] and John Medved individually, alleging violations of the Colorado Consumer Protection Act ("CCPA"). Plaintiffs alleged that Medved's sales documents failed to disclose the price and existence of various dealer-added aftermarket products, thereby causing an injury to Plaintiffs who paid for those products. Plaintiffs sought certification of two classes: one which included customers who paid for dealer-added products that were never installed and another which included customers who were unaware of the dealer-added products due to Medved's deceptive sales documents.
Class certification turns on whether Plaintiffs can establish the causation and injury elements of their CCPA claims on a class-wide basis, thereby obviating the need to analyze the face-to-face interactions inherent in each automobile sale. Consistent with our decision in BP America Production Co. v. Patterson, we hold that the causation and injury elements of a CCPA claim may be inferred from circumstantial evidence common to a class. Crucially though, the defendant has the opportunity to rebut any such class-wide inferences with individual evidence. A trial court must therefore rigorously analyze all the evidence presented to determine whether class-wide inferences are appropriate.
In the instant case, the trial court determined that Plaintiffs could prove the causation and injury elements of their CCPA claims with circumstantial evidence common to both Classes, namely, the standard documents and records utilized by Medved in selling automobiles. The trial court explained that class-wide inferences of causation and injury were appropriate because Plaintiffs were not relying on the face-to-face interactions inherent in each vehicle sale. As a result, the trial court did not consider whether the individual evidence presented by Medved rebutted the class-wide inferences of causation and injury crucial to the certification of both classes.
We agree with the court of appeals that the trial court erred by not rigorously analyzing the evidence presented by Medved. If the evidence presented by Medved regarding the face-to-face transactions inherent in vehicle sales rebutted Plaintiffs' allegation that each Plaintiff actually relied on Medved's sales documents in paying for dealer-added products, Plaintiffs would be unable to resort to class-wide inferences to establish the elements of causation and injury. We thus affirm the court of appeals' order remanding the case to the trial court to rigorously analyze the individual evidence and determine to its satisfaction whether Plaintiffs can establish class-wide theories of causation and injury.

I. Facts and Procedure
Plaintiffs brought a class action against ten automobile dealerships operating under the Medved name and John Medved individually. They alleged violations of the CCPA due to Medved's failure to disclose the price of various dealer-added aftermarket products. They moved for certification of two classes: (I) consumers who purchased a vehicle from defendants between April 8, 2003 and June 26, 2009 and were charged for dealer-added products that were never installed ("Class I"); and (II) consumers who purchased a vehicle between April 8, 2003 and June 26, 2009 and were charged for dealer-added products that were installed but not disclosed in writing ("Class II").
Plaintiffs alleged that Medved's standard practice was to automatically add a charge to a new vehicle's price for dealer-added products that would be installed at a later time. These add-ons consisted of such items as pin *95 striping, clear bra,[2] and truck bed liners. Plaintiffs also claimed that the standard practice at Medved dealerships was to create a Repair Order documenting the installation of dealer-added products at the dealership. In cases where pin striping was applied by a third-party vendor, a standard Purchase Order was created to order the vendor-supplied service. Both Repair and Purchase Orders were tracked through the use of a computer system. Thus, Plaintiffs claimed, if there was neither a Repair Order nor a Purchase Order for a dealer-added product purchased by a customer, it reasonably could be assumed that the dealer-added product was never in fact installed. Because there were no service records for a large percentage of sales, Plaintiffs alleged that Medved never actually installed the dealer-added products for which it charged consumers. These consumers comprise Class I.
Plaintiffs also alleged that even when a dealer-added product was installed, it was without the knowledge and consent of the consumer. In support of this allegation, Plaintiffs submitted the standard forms used by Medved in retail installment sales, including a Buyers Order, an Addendum sticker, and a Monroney sticker. These forms, Plaintiffs claimed, only disclosed the price of the dealer-added products through an obscure cross-reference in the standard Buyers Order, presented to consumers in a large stack of closing documents. Plaintiffs claimed that these confusing forms violated the CCPA because they lacked "clear and unambiguous" language disclosing the add-ons as required by the statute. The trial court agreed, ruling on cross-motions for summary judgment that Medved's disclosures of dealer-added products were deceptive and did not comply with the CCPA as a matter of law. Consumers presented with these deceptive forms comprise Class II.
Medved, in turn, presented various arguments opposing certification of either Class. Medved primarily argued that it would be necessary to analyze each individual sales transaction to determine whether Medved's deceptive sales documents caused an injury to Plaintiffs.[3] As such, Medved argued that Plaintiffs could not rely on class-wide inferences of causation or injury to establish their CCPA claims. Absent such theories, Medved argued that individual issues would predominate over questions common to either Class.
To support this argument, Medved submitted evidence regarding the individual interactions inherent in a typical automobile sale at a Medved dealership. Patrick Nieto, a sales manager for the Medved dealerships located in Wheat Ridge, submitted an affidavit describing the typical face-to-face transactions that take place between a prospective consumer and a Medved sales representative. He explained that consumers arrive at the dealership and are free to visually inspect the cars on the lot. Consumers are then approached by a Medved sales representative and have the opportunity to inquire about anything with respect to a particular vehicle. At some point, the parties discuss the selling price of the vehicle. According to Nieto, this negotiation can take a number of different paths, including discussions regarding the MSRP as listed on the Monroney sticker, discounts the dealership can offer, and whether the customer is interested in purchasing a warranty or other vehicle protection packages. The existence, origin, and/or price of dealer-added products, if any, might or might not be a topic of discussion between the sales representative and the customer.
Nieto also described the last phase of a typical sale, a meeting between the consumer *96 and the Finance and Insurance Department. At this meeting, Nieto explained, the consumer is provided with a Buyer Order which explicitly states that the information on the window of the car is part of the contract. Accordingly, the consumer would be provided with the vehicle's Monroney and Addendum stickers to take with them to the closing. Nieto thus explained that it would be necessary to analyze each individual sales transaction to determine whether the consumer knew about the price and existence of dealer-added products, if any.
Medved also submitted an affidavit from Virginia Johnson, the Administrative Service Manager and Warranty Manager for Medved. She individually analyzed a number of transactions to determine whether Medved had installed dealer-added products paid for by consumers. She explained that dealer-added products were in fact installed in numerous cases despite the absence of a Repair or Purchase Order. Thus, in her view, it would be improper to assume that dealer-added products were not installed based only on the absence of a Repair or Purchase Order.
At core, the certification decision turns on C.R.C.P. 23(b)(3)'s predominance requirement and whether Plaintiffs can establish a valid, class-wide theory for proving their CCPA claims. See Farmers Ins. Exch. v. Benzing, 206 P.3d 812, 820 (Colo.2009). Among other things, the CCPA requires a plaintiff to establish a causal nexus between the allegedly deceptive practice and the consumer harm. Hall v. Walter, 969 P.2d 224, 236 (Colo.1998). The CCPA also requires a plaintiff to demonstrate an injury in fact to a legally protected interest. Id. The crucial issue in this case is whether Plaintiffs can establish the causation and injury elements of their CCPA claims on a class-wide basis.
Plaintiffs argued that causation could be inferred from circumstantial evidence common to all class members. For Class I, Plaintiffs claimed that Medved falsely represented that vehicles had certain dealer-added items installed, Medved charged consumers for those items, and the Plaintiffs paid for those items (despite the fact they did not exist). For Class II, Plaintiffs claimed that every member was subjected to uniform deceptive conduct, namely, Medved's deceptive sales documents, and every class member immediately thereafter paid for inadequately disclosed add-ons. Based on this common evidence, Plaintiffs claimed it could be inferred that Medved's deceptive sales documents caused an injury to Plaintiffs on a class-wide basis.
Alternatively, Plaintiffs argued that the court could adopt an evidentiary presumption analogous to that articulated in Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), due to Medved's materially deceptive sales documents. This formal presumption, Plaintiffs explained, would shift the burden onto Medved to introduce individual evidence showing that its deceptive sales documents did not cause an injury (i.e., that Plaintiffs did not rely on Medved's deceptive sales documents to their detriment). Plaintiffs claim that Medved failed to rebut any class-wide presumption because it only submitted speculative evidence about what occurred during face-to-face transactions at a typical Medved dealership.
Plaintiffs further argued that they could establish injury on a class-wide basis. For Class I, they claimed that the damages are clear: if a consumer was charged for an undisclosed item not installed on their vehicle, he or she should be refunded the fraudulent charge. For Class II, Plaintiffs asserted that damages are the difference between what each consumer paid for the add-ons and what he or she would have paid if Medved had complied with the CCPA and properly disclosed the cost of the add-ons.
In light of these class-wide theories for proving causation and injury, Plaintiffs argued that common issues predominated over individual issues for the purposes of C.R.C.P. 23(b)(3).
Medved opposed certification on numerous grounds. It argued that the trial court would have to analyze each individual face-to-face transaction to determine whether its deceptive sales documents caused injury. Medved also presented individual evidence demonstrating that dealer-added products *97 were installed on numerous vehicles despite the lack of Purchase or Repair Orders. Based on this evidence, Medved argued that it would be inappropriate to infer either causation or injury on a class-wide basis. Thus, Medved claimed, Plaintiffs lacked class-wide theories for proving the elements of causation and injury for either Class. Absent such theories, Medved urged the court to determine that Plaintiffs had failed to demonstrate that common questions of causation and injury predominate over individual questions. Moreover, because the trial court would have to analyze each transaction to determine causation and injury, Medved argued that Plaintiffs had failed to define a readily identifiable class, or establish numerosity, typicality, or superiority.
Without holding an evidentiary hearing, the trial court certified both classes. In analyzing C.R.C.P. 23(b)(3)'s predominance requirement, the trial court accepted Plaintiffs' contention that they could prove the causation and injury elements of their CCPA claims based on Medved's deceptive sales documents and standard records. The trial court explained that "Garcia is not relying on verbal face-to-face omissions or statements, but rather standard documents and records utilized by [Medved] in selling vehicles." The trial court did not, therefore, consider whether the evidence submitted by Medved regarding the face-to-face transactions inherent in each vehicle sale could rebut Plaintiffs' proposed theories of proof, making individual findings on the elements of causation and injury necessary. Based on Plaintiffs' class-wide theories for proving causation and injury, the trial court determined that common issues predominated over individual issues for the purposes of C.R.C.P. 23(b)(3) and that Plaintiffs had satisfied C.R.C.P. 23(a)'s requirements as well as C.R.C.P. 23(b)(3)'s superiority requirement. Accordingly, the trial court certified both Classes.
Medved appealed and the court of appeals reversed in Garcia v. Medved Chevrolet, Inc., 240 P.3d 371 (Colo.App.2009). The court of appeals rejected Plaintiffs' class-wide theories for proving the causation and injury elements of their CCPA claims. To begin with, the court of appeals was "unable to find support for a presumed reliance doctrine in Colorado." Id. at 380. The court further explained that Colorado caselaw did not stand "for the proposition that an inference of causation or reliance is established where there is a material uniform misrepresentation or omission in the context of claims under the CCPA." Id. Even if causation could be inferred on a class-wide basis, the court of appeals reasoned that remand was necessary for "a more rigorous analysis of the face-to-face purchase transactions" and their impact on Plaintiffs' class-wide theories of proof. Id. at 381. The court of appeals thus remanded the case for further proceedings.
Plaintiffs appealed to this Court and we granted certiorari.[4]

II. Standard of Review
We review a trial court's decision to certify a class under the highly deferential abuse of discretion standard. See Benzing, 206 P.3d at 817; Friends of Chamber Music v. City & Cnty. of Denver, 696 P.2d 309, 317 (Colo.1985). An abuse of discretion occurs where the trial court's decision is manifestly arbitrary, unreasonable, or unfair, or when the trial court applies the incorrect legal standards. See Jackson v. Unocal Corp., 262 P.3d 874, 879 (Colo.2011). "[S]o long as the trial court rigorously analyzes the evidence, it retains discretion to find to its satisfaction whether the evidence supports each C.R.C.P. 23 requirement." Id. at 884.

III. Analysis
In this case, the class certification decision turns on whether Plaintiffs can establish class-wide theories for proving the causation and injury elements of their CCPA claims. This issue is central to C.R.C.P. 23(b)(3)'s predominance requirement and also relates to a number of other class certification requirements, including C.R.C.P. 23(b)(3)'s superiority requirement, C.R.C.P. 23(a)'s numerosity *98 and typicality requirements, and whether Plaintiffs have defined a readily identifiable class. We focus first on whether Plaintiffs have established class-wide theories of proof for the purposes of the C.R.C.P. 23(b)(3)'s predominance inquiry. We then consider this issue with respect to the additional class certification criteria challenged by Medved.

A. C.R.C.P. 23(b)(3)'s Predominance Requirement
C.R.C.P. 23(b)(3) requires a trial court to find that common questions "predominate over any questions affecting only individual members" and that class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." C.R.C.P. 23(b)(3)'s predominance inquiry focuses on "whether the proof at trial will be predominantly common to the class or primarily individualized." Medina v. Conseco Annuity Assur. Co., 121 P.3d 345, 348 (Colo.App.2005). This is a "fact-driven, pragmatic inquiry[,]" id., that often turns on "whether the plaintiff advances a theory by which to prove or disprove an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position,'" Benzing, 206 P.3d at 820 (quoting Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 580 (D.Minn.1995)). A trial court must rigorously analyze the evidence presented and "determine to its satisfaction whether the plaintiff has satisfied each of the C.R.C.P. 23 requirements." Jackson, 262 P.3d at 884.
A plaintiff asserting a private cause of action under the CCPA must establish five elements:
(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.
Hall, 969 P.2d at 235. In this case, the central issue for purposes of class certification is whether Plaintiffs can establish the fourth and fifth CCPA elements of causation and injury on a class-wide basis.

1. Class-Wide Theory of Causation
Plaintiffs contend that they can establish the causation element of their CCPA claims on a class-wide basis without consideration of individual evidence. Specifically, Plaintiffs argue that causation logically can be inferred from Medved's deceptive sales documents and Plaintiffs' subsequent purchase of a vehicle. That is, it can be inferred that Medved's deceptive sales documents caused an injury given that every Class I member relied on these documents in paying for non-existent dealer-added products while every Class II member relied on these documents in paying for inadequately disclosed dealer-added products. Plaintiffs further argue that a class-wide inference of causation obviates the need to analyze each face-to-face sales transaction to determine whether an individual Plaintiff actually relied on Medved's deceptive sales document or otherwise did not know about the dealer-added products at the time of purchasing a vehicle.
Reliance often provides a key causal link between a consumer's injury and a defendant's deceptive practice. In May Department Stores Co. v. Woodard, we held that a consumer was harmed by a defendant's violation of the CCPA if that consumer had been exposed to defendant's deceptive practice and had undertaken activities in reliance on that deceptive practice. 863 P.2d 967, 973-74 (Colo.1993). Similarly, in Crowe v. Tull, we held that the plaintiff could maintain a CCPA claim against a lawyer for misleading advertising. 126 P.3d 196 (Colo.2006). We explained that the plaintiff could demonstrate causation based on the theory that "reliance on the [attorney's misleading] advertising was the first link in a chain that led to" the plaintiff's injury. Id. at 210.
Reliance may be inferred from circumstantial evidence common to a class. In BP America, plaintiff royalty owners alleged that BP America Production Company ("BP") fraudulently concealed improper deductions *99 from royalties owed them under their royalty agreements. Slip op. at 4. One crucial issue for the purposes of the C.R.C.P. 23(b)(3) predominance inquiry was whether plaintiffs had established a class-wide theory for proving the ignorance and reliance elements of their fraudulent concealment claims. Id. at 16. On this point, we held that ignorance and reliance could be inferred from circumstantial evidence common to a class, i.e. without direct evidence of reliance. Id. at 17. Of course, we explained, the defendant has the opportunity to rebut such class-wide inferences with direct evidence. Id. at 19. We thus made it clear that the trial court must rigorously analyze the evidence presented to determine whether a class-wide inference is appropriate given the facts and circumstances of the case. Id.
Courts have certified consumer fraud class-actions where causation can be established with circumstantial evidence common to a class, i.e. without direct evidence of reliance by individual consumers. For example, in Negrete v. Allianz Life Insurance of North America, the court certified a class of consumers who purchased annuities issued by Allianz. 238 F.R.D. 482, 484 (C.D.Cal. 2006). The plaintiffs alleged that Allianz concealed the disadvantages of the annuities it sold, including undisclosed sales commissions and forfeiture and penalty provisions. Id. at 486. To establish a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the plaintiffs had to demonstrate that Allianz's deceptive sales practices proximately caused them harm. Id. at 489. Proof of causation turned on whether the plaintiffs relied on Allianz's misleading statements regarding the annuities it sold. Id. at 490. The court held that the plaintiffs could establish reliance on a class-wide basis with the "common sense inference that no rational class member would purchase the annuities in questions [sic] upon adequate disclosure of the facts...." Id. at 491. Because reliance could be inferred from evidence common to the class, the court concluded that common issues predominated over individual issues with respect to the plaintiffs' RICO claim. Id. at 492.[5]
Frequently, however, proof of reliance varies from individual to individual. For example, in Stout v. J.D. Byrider, plaintiffs sought class certification alleging violations of the Ohio Consumer Sales Practices Act and the federal Truth in Lending Act arising from their purchase of motor vehicles. 228 F.3d 709 (6th Cir.2000). The core issue in the case was "whether each putative class member relied upon false representations or failures to disclose, and if so, what damages were proximately caused by that reliance." Id. at 718. The Sixth Circuit explained that resolution of the issue of reliance "requires an individual assessment of what documents the customer reviewed and in what manner, what representations Defendants made to each customer, and whether the customer selected the extended service agreement." Id. Because the plaintiffs were not subject to a uniform deceptive practice, the Sixth Circuit affirmed the trial court's determination that individual issues predominated over common issues with respect to causation. Id.
Other courts have similarly refused to certify class actions where an individual assessment is required to determine whether a class member relied on a defendant's deceptive practice and whether that practice caused injury. See In re St. Jude Med., Inc., 522 F.3d 836, 838 (8th Cir.2008) ("Because proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied *100 on the representations, fraud cases often are unsuitable for class treatment."); McManus v. Fleetwood Enters., 320 F.3d 545, 550 (5th Cir.2003) (refusing to certify a class action based on a class-wide presumption of reliance because "[r]eliance will vary from plaintiff to plaintiff, depending on the circumstances surrounding the sale"); Markarian v. Conn. Mut. Life Ins., 202 F.R.D. 60, 69 (D.Mass. 2001) (refusing to presume reliance or causation based on material omissions where "the total mix of information made available to each purchaser was distinctive, if not unique, and the question of causation must be decided with regard to each purchaser in the context of the particular information that he or she received"); Fed.R.Civ.P. 23 advisory committee's note (Discussing the 1966 Amendment to subdivision (b)(3): "[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.").
In this light, a trial court must rigorously analyze the evidence presented to determine whether the evidence supports a class-wide inference of causation. As part of this analysis, the trial court must consider not only whether the circumstantial evidence common to the class supports an inference of causation, but also whether any individual evidence refutes such an inference. BP America, slip op. at 27 ("A trial court may not ignore evidence presented to refute a C.R.C.P. 23 requirement."). "The trial court must then determine whether the class-wide inference causes common issues to predominate over individual issues for the purposes of C.R.C.P. 23(b)(3)." Id. at 20. Ultimately, this determination is committed to the case-management discretion of the trial court. See Jackson, 262 P.3d at 880.
In the instant case, the trial court certified both Classes based solely on the strength of the circumstantial evidence presented by Plaintiffs. The trial court was persuaded that causation could be inferred from: (1) Medved's use of deceptive sales documents; (2) Medved's standard practice of adding charges to vehicles for dealer-added products; (3) Medved's standard method for documenting dealer-added product installation; and (4) the absence of certain dealer records. The trial court determined that this common evidence supported a class-wide inference of causation. Based on this inference, the trial court concluded that common issues predominated over individual issues for the purposes of C.R.C.P. 23(b)(3).
By focusing solely on the circumstantial evidence common to both Classes, however, the trial court failed to take into account the individual evidence presented by Medved. This failure results from the trial court's acceptance of Plaintiffs' allegation that they were not relying on face-to-face transactions to prove causation. Thus, the trial court did not consider whether the evidence submitted by Medved rebutted the class-wide inference of causation.
Medved offered evidence that face-to-face interactions did occur between each Plaintiff and a Medved sales representative. Specifically, Medved presented direct evidence regarding a typical vehicle sale at a Medved dealership. Medved's sales manager Nieto explained in his affidavit that the purchase of a vehicle from a Medved dealership involves a three-step process, including the consumer's visual inspection of the vehicle on the lot, face-to-face discussions with a Medved sales representative, and a meeting with Medved's finance department. Given this common practice, a consumer may have been aware of the dealer-added items (if any) through visual inspections of the vehicle on the lot, face-to-face negotiations with a sales representative, or review of the Addendum sticker. If the consumer then voluntarily paid a final, negotiated price for a dealer-added product, there may be no causal nexus between Medved's deceptive sales documents and any injury to the consumer. That is, if the consumer observed or discussed the existence and price of the dealer-added products with a Medved sales representative, then Medved's deceptive sales documents did not necessarily cause injury. Medved also presented evidence to rebut Plaintiffs' assumption that dealer-added products were not installed where Medved lacked a Purchase or Repair Order. The evidence submitted by Medved *101 thus suggests that individualized inquiries may be necessary to determine whether each Plaintiff relied on Medved's allegedly deceptive sales documents and whether that reliance caused injury.
The trial court erred by failing to consider the individual evidence submitted by Medved. In BP America, we held that a Plaintiff may rely on class-wide inferences of reliance. Slip op. at 17. We also expressly held that a defendant may rebut a class-wide inference of reliance with individual evidence. Id. at 19 ("Of course, the defendant may introduce individual evidence to rebut a class-wide inference."). We thus directed trial courts to "rigorously analyze all the evidence presented to satisfy [themselves] that [the plaintiffs] have met the requirements for class certification." Id. at 27. We then upheld the trial court's determination that class-wide inferences of ignorance and reliance were appropriate despite the individual evidence submitted by BP. Id. at 27-28. Crucial to our holding was the trial court's rigorous analysis of the individual rebuttal evidence presented by BP and express determination that it was unpersuasive. Id. at 22.
Here, in contrast, the trial court did not determine whether the evidence submitted by Medved rebutted a class-wide inference of causation. Instead, the trial court rested its conclusion on Plaintiffs' allegation that they were not relying on face-to-face transactions to prove causation and its determination that causation could be inferred from Medved's standard sales documents. This analysis falls short of that required by C.R.C.P. 23 and runs contrary to our decision in BP America. The decision is further problematic given that individual evidence that tends to rebut the class-wide inference of causation relied on by Plaintiffs could cause individual rather than common issues to predominate for purposes of C.R.P.C. 23(b)(3). See, e.g., In re St. Jude, 522 F.3d at 838; McManus, 320 F.3d at 550; Stout, 228 F.3d at 718; Markarian, 202 F.R.D. at 69. We thus affirm the court of appeals' judgment remanding the case to the trial court to determine whether "such individualized evidence will affect the question of predominance."[6]Garcia, 240 P.3d at 381.[7]

2. Class-Wide Theory of Injury
In Hall v. Walter, this Court made explicit the requirement that a plaintiff bringing a private CCPA claim must establish that he or she "suffered injury in fact to a legally protected interest." 969 P.2d at 234. Plaintiffs allege that the fact of injury can be established on a class-wide basis. Quite simply, Plaintiffs explain, all Class I members paid for dealer-added products that were never installed, while Class II members paid for inadequately disclosed dealer-added products. The trial court agreed that damages *102 would be easily calculable and thus not central to the litigation.
Normally, the "need for some proof of individual damages does not preclude certification under C.R.C.P. 23(b)(3)." Buckley Powder Co. v. State, 70 P.3d 547, 554 (Colo. App.2002). We have thus deferred to a trial court's decision to certify a class action despite the presence of individual damages issues. See Jackson, 262 P.3d at 890. In the instant case, however, the trial court erred by simply accepting Plaintiffs' allegation that injury could be established on a class-wide basis with Medved's deceptive sales documents and Plaintiffs' purchase of dealer-added products.
As the court of appeals explained, determining whether a Plaintiff was injured may require an inquiry into each face-to-face transaction and vehicle purchase. Garcia, 240 P.3d at 381. For example, certain Class I Plaintiffs may not have suffered an injury due to Medved's deceptive sales documents if they "paid a price lower than the MSRP less the value of the dealer-added, but omitted products." Id. Similarly, certain Class II Plaintiffs may not have suffered an injury if the "particular price paid for a given automobile was so far below the MSRP that there was no effective charge for manufacturer-installed options, let alone dealer-added products." Id. Accordingly, the court of appeals concluded that "the price paid by each customer is an important and predominant component of injury." Id. The court of appeals thus remanded the case to the trial court to consider the evidence of individual face-to-face transactions in determining whether Plaintiffs had established a class-wide theory of injury. Id.
We agree with the court of appeals for the reason that the trial court failed to analyze the individual evidence submitted by Medved and consider whether that evidence rebutted Plaintiffs' class-wide theory of injury. Medved presented evidence that the price of a vehicle was often discussed during the face-to-face transactions between a consumer and a Medved sales representative. Medved also presented individual evidence demonstrating that dealer-added products were installed on numerous vehicles despite the lack of Purchase or Repair Orders. This evidence suggests that the fact finder will have to analyze each transaction and the price paid to determine whether a particular customer suffered an injury. The trial court, however, did not consider this evidence, instead simply stating that "damages will be easily calculable and not central to the litigation." This truncated analysis falls short of the trial court's duty to rigorously analyze all of the evidence presented to determine whether Plaintiffs have satisfied the requirements for class certification. See BP America, slip op. at 27. We thus agree with the court of appeals that a remand is necessary for the trial court to consider the evidence regarding each sales transaction in assessing Plaintiffs' class-wide theory of injury.
Plaintiffs argue, however, that there is no need to analyze each individual transaction. Plaintiffs claim that they necessarily suffered an injury by virtue of the fact that they paid for inadequately disclosed dealer-added products. That is, assuming Medved committed a uniform deceptive practice and Plaintiffs relied on that deception in purchasing dealeradded products, then the Plaintiffs invariably suffered an injury. Plaintiffs argue that this injury is particularly apparent with respect to Class I where customers paid for dealeradded products that were never installed. Medved, however, presented individual evidence and testimony rebutting these allegations. The trial court must therefore consider this evidence in assessing Plaintiffs' class-wide theory of injury. So long as the trial court rigorously analyzes this evidence, it retains the discretion to determine, to its satisfaction, whether common issues predominate over individual issues with respect to Plaintiffs' CCPA claims. See Jackson, 262 P.3d at 884.

B. Additional C.R.C.P. 23 Requirements
Whether Plaintiffs have a class-wide method of establishing the causation and injury elements of their CCPA claims influences other aspects of the trial court's certification decision. Due to the need for individual inquiries into whether Medved's deceptive sales documents caused an injury to Plaintiffs, Medved argues that Plaintiffs failed to *103 define a readily identifiable class, establish C.R.C.P. 23(a)'s numerosity or typicality requirements, or establish that the class mechanism is superior to other available methods of litigation as required by C.R.C.P. 23(b)(3).[8] Because we agree with the court of appeals that the trial court failed to rigorously analyze the individual evidence presented by Medved and consider whether it refuted Plaintiffs' class-wide theories of proof, we affirm the court of appeals' order remanding the case to the trial court to determine not only whether common issues predominate over individual issues, but also whether both classes were identifiable and whether Plaintiffs can satisfy C.R.C.P. 23's superiority, numerosity, and typicality requirements.
We also affirm the court of appeals' determination that named Plaintiff Garcia cannot serve as a representative of Class II. Garcia, 240 P.3d at 381-82. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Class II was defined to include those consumers who were charged for dealer-added products that were installed but not disclosed in writing. Garcia, however, alleges that she paid for dealer-added products that were never installed. Given that she suffered a distinct injury from Class II members, she cannot serve as a representative for Class II.

IV. Conclusion
For the foregoing reasons, we affirm the judgment of the court of appeals.
Justice EID concurs in the judgment, and Justice RICE joins in the concurrence.
Justice EID, concurring in the judgment.
I agree with the majority that the district court erred in failing to consider whether the evidence of face-to-face negotiations precludes class-wide proof of causation and injury in this case. I would instruct the district court on remand, however, to employ the preponderance of the evidence standard in determining whether the requirements of class certification have been met. See Jackson v. Unocal (Eid, J., dissenting). Accordingly, I concur in the result reached by the majority.
I am authorized to state that Justice RICE joins in this concurrence.
NOTES
[1] Plaintiffs filed suit against Medved Chevrolet, Inc.; Medved Chevrolet South, Inc.; Castle Rock Ford-Mercury, Inc.; Medved Buick Pontiac GMC, Inc.; Lakewood Chrysler-Plymouth, Inc.; Medved Chrysler Jeep Dodge South, Inc.; Medved Chrysler Jeep Dodge, Inc.; Medved Pontiac Buick GMC, Inc.; Medved Suzuki North, Inc.; and Medved Suzuki South, Inc.
[2] Clear Bra, a.k.a. Paint Protection Film, is a thermoplastic urethane film that is applied to the leading painted surfaces of a new or used car in order to protect the paint from stone chips, bug splatter and minor abrasions.
[3] Medved denies that its sales documents violated the CCPA. It argues that it disclosed the existence of dealer-added products through the Monroney and Addendum stickers typically adhered to the window of a new vehicle. Where the Monroney sticker listed the Manufacturer's Suggested Retail Price ("MSRP") of the new vehicle, the Addendum sticker itemized the cost of any dealer-added products. These stickers, Medved claims, properly disclosed the price and existence of dealer-added products. The trial court's ruling that Medved's standard forms were deceptive as a matter of law is not, however, before this court.
[4] We granted certiorari on one issue:

Whether the court of appeals erred in reversing the trial court's certification of a class.
[5] Other courts have similarly recognized an inference of causation where class members purchased products after being subjected to a uniform deceptive practice. See, e.g., Garner v. Healy, 184 F.R.D. 598, 602 (N.D.Ill.1999) (certifying a class of consumers who purchased a substance represented as "car wax" that allegedly contained no wax, explaining that "if Plaintiffs paid money for a `wax,' but instead received a worthless `non-wax' product, then issues of proximate cause would be relatively simple to resolve on a class-wide basis"); Peterson v. H & R Block Tax Servs., Inc., 174 F.R.D. 78, 85 (N.D.Ill.1997) (certifying a class of consumers who purchased a tax refund service for which they were ineligible, explaining that reliance and causation could be inferred on a class-wide basis because "[t]he only logical explanation for such behavior is that the class members relied on [the defendants'] representation that they could take advantage of [the service] by paying the requisite fee").
[6] Our conclusion is not altered by Plaintiffs' argument that they are entitled to a formal, evidentiary presumption of causation. Plaintiffs contend that when a defendant withholds material information it is "by definition" withholding information on which a reasonable person would rely and therefore causation may be presumed. Courts have applied a formal presumption of reliance in certain narrow circumstances, such as where there is a duty to disclose. See Regents of Univ. of Cal. v. Credit Suisse First Boston (USA), Inc., 482 F.3d 372, 385 (5th Cir.2007) (refusing to apply a presumption of reliance because defendant bank owed plaintiffs no duty to disclose); Murray v. Sevier, 156 F.R.D. 235, 248 (D.Kan.1994) (applying a presumption of reliance in a case that involved a corporate director with a fiduciary duty to disclose and where "the representations were mostly written and sufficiently uniform, as opposed to oral and/or varied").

Regardless of whether a presumption of reliance applies in the context of the individual sales transactions in this case, Medved has the right to rebut such a presumption with individual evidence of face-to-face transactions. See BP America, slip op. at 19. The trial court must rigorously analyze this evidence to determine whether it rebuts any class-wide presumption of reliance, causing individual issues to predominate over common issues. Accordingly, we affirm the court of appeals' decision remanding the case to the trial court for a rigorous analysis of the individual evidence to determine whether Plaintiffs have established a class-wide theory of causation.
[7] On remand, the court of appeals directed the trial court to apply a preponderance of the evidence standard. Garcia, 240 P.3d at 382. Our decision in Jackson does not impose such a specific burden of proof. Instead, on remand, the trial court need only determine to its satisfaction that the evidence presented establishes each of the C.R.C.P. 23 requirements. Jackson, 262 P.3d at 882.
[8] For example, Medved argues that the trial court would have to conduct intensive individual inquiries to determine whether an individual suffered an injury and was thus a member of the class. Due to the need for these individual inquiries, Medved argues the description of the class was not "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." LaBerenz v. Am. Family Mut. Ins., 181 P.3d 328, 334 (Colo.App.2007) (quotations omitted). Similarly, due to the need for these individual inquiries, Medved argues that the class mechanism is not superior to other means of adjudicating Plaintiffs' claims.