The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 29, 2022

## 2022COA149

**No. 22CA0968, *Hicks v Colorado Hamburger Company* — Court and Court Procedure — Class Actions — Appeals of Grant or Denial of Class Certification; Labor and Industry — Colorado Overtime and Minimum Pay Standard Order**

In this interlocutory appeal filed pursuant to section 13-20-901, C.R.S. 2022, C.A.R. 3.3, and C.R.C.P. 23(f), a division of the court of appeals considers whether the district court abused its discretion in denying a proposed class certification for fast food workers allegedly deprived of meal and rest breaks. Plaintiff's lawsuit is premised on purported violations of the Colorado Overtime and Minimum Pay Standard Order, a Colorado Department of Labor and Employment regulation that articulates various protections for hourly wage earners.

We agree with the district court that Plaintiff's claim based on the deprivation of meal breaks cannot proceed because individual

issues will predominate over common ones; however, we conclude that because Plaintiff plans to use a viable class-wide means of proving liability and damages for the alleged deprivation of rest breaks, common issues will predominate over individual ones, thus rendering class certification appropriate.

COLORADO COURT OF APPEALS                                    **2022COA149**

Court of Appeals No. 22CA0968
La Plata County District Court No. 20CV30136
Honorable Todd P. Norvell, Judge

Jacob Thomas Hicks,

Plaintiff-Appellant,

v.

Colorado Hamburger Company, Inc., and JOBEC, Inc.,

Defendants-Appellees.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE FOX
Tow and Yun, JJ., concur

Announced December 29, 2022

The Law Offices of Brian D. Gonzales, PLLC, Brian D. Gonzales, Fort Collins,
Colorado; Hood Law Office PLLC, Alexander Hood, Denver, Colorado, for
Plaintiff-Appellant

Fisher & Phillips LLP, Micah D. Dawson, Jeffrey H. McClelland, Denver,
Colorado, for Defendants-Appellees

¶ 1     This is an interlocutory appeal filed pursuant to section 13-20-901, C.R.S. 2022; C.A.R. 3.3; and C.R.C.P. 23(f).  Plaintiff, Jacob Thomas Hicks, challenges the district court's order denying his motion to certify a class of fast-food workers.  Hicks alleges that he and other similarly situated individuals were deprived of statutorily mandated rest and meal breaks and are therefore owed back pay.

¶ 2     Although we agree with the district court that Hicks failed to satisfy the C.R.C.P. 23 class certification requirements for the alleged deprivation of meal breaks, we conclude that he has satisfied those requirements for the alleged deprivation of rest breaks.  Accordingly, we reverse the order in part and remand the case with directions to enter an order certifying a class premised on the denial of rest breaks.

## I.     Background

¶ 3     Defendants, Colorado Hamburger Company, Inc., and JOBEC, Inc. (jointly, Colorado Hamburger), own and operate three McDonald's restaurant franchises in Durango, Cortez, and Pagosa

Springs, Colorado.[1]  Hicks was employed at the Durango location from approximately February 2020 through June 2020.

¶ 4　　In September 2020, Hicks filed a class action complaint against Colorado Hamburger.  Hicks' lawsuit was premised on Colorado Hamburger's purported violation of a Colorado Department of Labor and Employment (CDLE) regulation that articulates various protections for hourly wage earners.  Colo. Overtime & Minimum Pay Standards Order No. 36, 7 Code Colo. Regs. 1103-1 (effective Mar. 16, 2020-Dec. 31, 2020) (COMPS Order).  More precisely, Hicks claimed Colorado Hamburger violated the COMPS Order by failing to provide (1) ten-minute compensated rest breaks for every four hours worked, and (2) thirty-minute uncompensated meal breaks for every five consecutive hours worked.

¶ 5　　As part of discovery, both sides submitted copies of Colorado Hamburger's employee handbook.  Employees must acknowledge their understanding of the handbook as a condition of employment.

---

[1] Colorado Hamburger and JOBEC are owned by the same individual, Michael Bronson.

¶ 6     Two aspects of that handbook are relevant here.  First, employees must clock in and out — at the beginning and end of their shift, and for rest and meal breaks — using a biometric electronic timekeeping system.  Employees press their thumb onto a pad, which automatically creates an entry for their profile.  Second, employees must abide by the break policy, which provides:

> *If schedules and workloads permit,* our Company provides [rest and meal breaks consistent with the COMPS Order].  Employees should not ask to take a break.  *Managers determine when breaks may be taken based on the required workload.*

(Emphases added.)

¶ 7     Among other things, Colorado Hamburger provided seventy affidavits of current and former employees.  In pertinent part, these affidavits uniformly state:

> I record my time through our electronic system.  For each day that I work, I record my hours and my total time worked.  *For each day that I work, I clock in and clock out at the start and end of my shift, and I also clock in and out for lunch or for rest breaks.*  This creates a record of my hours and my total time worked.

(Emphasis added.)

3

¶ 8    At Hicks' request, the court ordered Colorado Hamburger to supply unredacted timesheets for the seventy employees who provided the affidavits. Hicks' meta-analysis of these timesheets showed a dramatic decrease in missed breaks after Hicks filed his lawsuit in September 2020.[2]

| | | | | | Rest Breaks | | | |
|---|---|---|---|---|---|---|---|---|
| Year | Start Date | End Date | Number of Shifts | CO Minimum Wage Rate | Number of Earned Rest Breaks | Number of Missed Rest Breaks | Hours of Rest Break Time Owed | Value of Owed Rest Breaks |
| 2022 | 1/1/2022 | 2/4/2022 | 1,136 | $12.56 | 2,105 | 76 | 12.67 | $159.09 |
| 2021 | 1/1/2021 | 12/31/2021 | 9,017 | $12.32 | 16,540 | 640 | 106.67 | $1,314.13 |
| 2020 | 1/1/2020 | 12/31/2020 | 7,521 | $12.00 | 13,785 | 10,022 | 1,670.33 | $ 20,044.00 |
| 2019 | 1/1/2019 | 12/31/2019 | 5,599 | $11.10 | 10,396 | 8,885 | 1,480.83 | $ 16,437.25 |
| 2018 | 1/1/2018 | 12/31/2018 | 3,714 | $10.20 | 7,041 | 5,818 | 969.67 | $9,890.60 |
| 2017 | 2/1/2017 | 12/31/2017 | 2,712 | $9.30 | 5,145 | 4,712 | 785.33 | $7,303.60 |
| TOTAL | | | 29,699 | | 55,012 | 30,153 | 5,025.50 | $55,148.68 |

| | | | | | Meal Breaks | | | |
|---|---|---|---|---|---|---|---|---|
| Year | Start Date | End Date | Number of Shifts | CO Minimum Wage Rate | Number of Earned Meal Breaks | Number of Missed Meal Breaks | Hours of Meal Break Time Owed | Value of Owed Meal Breaks |
| 2022 | 1/1/2022 | 2/4/2022 | 1,136 | $12.56 | 1,022 | 48 | 24.00 | $301.44 |
| 2021 | 1/1/2021 | 12/31/2021 | 9,017 | $12.32 | 7,981 | 406 | 203.00 | $2,500.96 |
| 2020 | 1/1/2020 | 12/31/2020 | 7,521 | $12.00 | 6,594 | 1,895 | 947.50 | $11,370.00 |
| 2019 | 1/1/2019 | 12/31/2019 | 5,599 | $11.10 | 5,014 | 1,661 | 830.50 | $9,218.55 |
| 2018 | 1/1/2018 | 12/31/2018 | 3,714 | $10.20 | 3,435 | 1,003 | 501.50 | $5,115.30 |
| 2017 | 2/1/2017 | 12/31/2017 | 2,712 | $9.30 | 2,508 | 927 | 463.50 | $4,310.55 |
| TOTAL | | | 29,699 | | 26,554 | 5,940 | 2,970.00 | $32,816.80 |

¶ 9    Hicks argued that the absence of a recorded break showed that the employer failed to authorize and permit a break. Colorado

---

[2] These tables were submitted by Hicks' counsel with his declaration.

Hamburger countered that the timesheets could not support such an inference; rather, the employees could have waived a break, failed to record it, or did not receive one but were compensated on the back end by the manager's manual adjustment.

¶ 10 Although the court determined that Hicks' proposed class satisfied the requirements of C.R.C.P. 23(a), it further concluded that Hicks failed to meet C.R.C.P. 23(b)(3)'s requirement that common questions predominate over individual ones. For this reason, the court denied class certification without conducting an evidentiary hearing.

## II. Hourly Wage Law

¶ 11 Two Colorado statutes establish the foundational wage protections for hourly workers: the Colorado Minimum Wage Act, §§ 8-6-101 to -120, C.R.S. 2022, and the Colorado Wage Claim Act, §§ 8-4-101 to -125, C.R.S. 2022. The CDLE is empowered to promulgate an annual regulation that implements these two statutes. COMPS Order, 7 Code Colo. Regs. 1103-1. Hicks' claim is based on Colorado Hamburger's purported violation of the regulations pertaining to rest and meal breaks.

¶ 12     With respect to rest breaks, the COMPS Order provides that "[e]very employer shall authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof, for all employees."  *Id.* at Rule 5.2.  It then elaborates on the rationale behind and implication of this rule, noting that

> [w]hen an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation.  Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided.  Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay.

*Id.* at Rule 5.2.4.

¶ 13     As for meal breaks, the COMPS Order states that an employee is entitled to an uncompensated, uninterrupted, and "duty-free meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours."  *Id.* at Rule 5.1.  But the Order also includes a caveat:

> When the nature of the business activity or other circumstances make an uninterrupted meal period impractical, the employee shall be

6

> permitted to consume an on-duty meal while performing duties. Employees shall be permitted to fully consume a meal of choice on the job and be fully compensated for the on-duty meal period without any loss of time or compensation.

*Id.* Thus, an employer must provide their employee with either (A) an uncompensated, uninterrupted, and duty-free thirty-minute meal break; or (B) the opportunity to consume a meal of choice while on the clock. *Id.*

¶ 14    In addition to giving employees rights to rest and meal breaks, the COMPS Order imposes record-keeping duties on employers. As pertinent here, employers must maintain "a true and accurate record for each employee which contains . . . [a] daily record of all hours worked." *Id.* at Rule 7.1(C).

¶ 15    Finally, if employees receive "less than the full wages or other compensation owed [they may] recover in a civil action the unpaid balance of the full amount owed." *Id.* at Rule 8.1(A).

III.    Standard of Review and Class Action Certification Law

¶ 16    We generally review a district court's decision to certify a class for an abuse of discretion. *Jackson v. Unocal Corp.*, 262 P.3d 874, 879-80 (Colo. 2011); *BP Am. Prod. Co. v. Patterson*, 263 P.3d 103,

7

108 (Colo. 2011). Accordingly, we will only reverse a district court's

class certification order if it is manifestly arbitrary, unreasonable,

or unfair, or when the court applies the incorrect legal standard.

*Jackson*, 262 P.3d at 880-81. If, however, a certification decision

rests purely on a question of law, we review de novo. *BP*, 263 P.3d

at 108.

¶ 17    Class actions serve important functions in our civil justice

system, including the promotion of judicial efficiency, consistency,

and access to justice. *See Jackson*, 262 P.3d at 880-81. For this

reason, we liberally construe C.R.C.P. 23 to support its policy

favoring maintenance of class actions. *Farmers Ins. Exch. v.*

*Benzing*, 206 P.3d 812, 817-18 (Colo. 2009); *LaBerenz v. Am. Fam.*

*Mut. Ins. Co.*, 181 P.3d 328, 333 (Colo. App. 2007).

¶ 18    A party can maintain a class action if:

> (1) The class is so numerous that joinder
> of all members is impracticable; (2) there
> are questions of law or fact common to
> the class; (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class; and (4)
> the representative parties will fairly and
> adequately protect the interests of the
> class.

C.R.C.P. 23(a).

¶ 19    In addition to satisfying these requirements, the party moving for class certification must prove, as relevant here, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  C.R.C.P. 23(b)(3).

## A.    Predominance

¶ 20    Whether common questions predominate over individual ones turns on "whether the proof at trial will be predominantly common to the class or primarily individualized."  *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98 (Colo. 2011) (citation omitted).  This is "a fact-driven, pragmatic inquiry guided by the objective of judicial efficiency and the need to provide a forum for the vindication of dispersed losses."  *Medina v. Conseco Annuity Assurance Co.*, 121 P.3d 345, 348 (Colo. App. 2005).  A plaintiff demonstrates predominance when it "advances a theory by which to prove or disprove 'an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'"  *Benzing*, 206 P.3d at 820 (citation omitted).

¶ 21    While a court may need to consider the parties' substantive claims and defenses as part of its predominance analysis, it must not prejudge the merits of the case or certify only those claims likely to prevail on the merits. *Jackson*, 262 P.3d at 885. And the need for individual proof of damages does not preclude a finding of predominance. *Id.* at 889.

### B.    Class-Wide Inferences

¶ 22    A party may rely on a class-wide inference to prove a common element of their claim. *See Garcia*, 263 P.3d at 99-102; *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 918-22 (10th Cir. 2018). Class-wide inferences are permissible because they prevent redundant inquiries into the individual circumstances of each class member. *BP*, 263 P.3d at 111. "[A] trial court must rigorously analyze the evidence presented to determine whether [it] supports a class-wide inference . . . ." *Garcia*, 263 P.3d at 100. This rigorous analysis requires a court to consider not only whether the circumstantial evidence common to the class supports an inference, but also whether any individual evidence offered by the opposing parties refutes that inference. *Id.* at 102; *BP*, 263 P.3d at 111.

## IV. Discussion

¶ 23 We first provide additional background on the district court's denial of class certification. We then address whether the court erred and conclude that it did not abuse its discretion by denying certification on the meal break theory but did so by denying certification on the rest break theory. *See Jackson*, 262 P.3d at 880-81.

### A. Additional Background

¶ 24 Hicks moved to certify the following class:

> All current and former non-exempt employees
> who worked for defendants in Colorado from
> six years prior to the filing of the complaint
> through final judgment.

In support, Hicks proffered depositions of himself and Colorado Hamburger's owner, electronic survey responses from nine current and former employees, and various redacted and unredacted timesheets. But his foundational support lay in three pieces of evidence: (1) Colorado Hamburger's employee handbook; (2) the seventy affidavits of current and former employees provided by Colorado Hamburger; and (3) the timesheets from those seventy affiants.

11

¶ 25   Synthesizing this evidence, Hicks argued that because the handbook's policy requires employees to clock in and out for all breaks, and because Colorado Hamburger's own affiants uniformly declared that they always abide by that policy, the absence of a recorded break on a timesheet supports the inference that the employer did not authorize and permit a break in violation of the COMPS Order.

¶ 26   With the exception of one affidavit from a manager that mirrored the other seventy affidavits, Colorado Hamburger opposed certification with the same evidence proffered by Hicks.  It claimed that a missing break on a timesheet did not mean that it failed to authorize and permit a break; rather, the timesheets could be inaccurate because employees may have waived their break or failed to record it.  In support of the first theory, Colorado Hamburger pointed to the uniform statement from the seventy affiants who said that "[i]n my experience, and based on my observations, if an employee does not take a rest break, that is solely their own choosing."  As for the argument that employees did not record their breaks, it leaned solely on a statement Hicks made in his deposition:

Q: [A]t the Durango McDonald's, did you ever forget to punch in and out either for the start or end of your shift or for a break?

A: There were a few times, but I always made sure that my manager . . . knew about it.

Q: Okay. So every time you forgot to punch in or out, you told your manager about that and — and then they fixed it, then; is that fair?

A: Yeah, they said that they would take care of it.

¶ 27 Consistent with C.R.C.P. 23(a), the court first concluded that Hicks' proposed class satisfied each of the four requirements: numerosity, commonality, typicality, and adequacy.[3] As part of its commonality analysis, the court identified several common issues of fact shared by potential class members:

---

[3] Colorado Hamburger argues that the district court determined that Hicks failed to satisfy numerosity, and that his failure to raise arguments regarding numerosity in his opening brief are fatal to his appeal. We disagree. As an initial matter, the court's ruling on numerosity is unclear: it first says that "Plaintiff has established there are numerous potential class members," but then notes that "there is an issue" which it addresses as part of its C.R.C.P. 23(b)(3) analysis — specifically, that not all potential class members can prove damages. Regardless, the court's subsequent C.R.C.P. 23(b)(3) analysis amounts to an implicit finding that the requirements of C.R.C.P. 23(a) were met, since the court could not perform the C.R.C.P. 23(b)(3) analysis if the C.R.C.P. 23(a) requirements were not met. *Jackson v. Unocal Corp.*, 262 P.3d 874, 880 (Colo. 2011).

- whether Colorado Hamburger failed to authorize and permit rest breaks;

- whether Colorado Hamburger failed to authorize and permit meal breaks;

- whether Colorado Hamburger had a policy of not providing compensation for missed breaks; and

- whether Colorado Hamburger did not fully compensate potential class members as a result of its failure to authorize and permit rest and meal breaks.

¶ 28    The court also identified multiple common issues of law:

- whether an employee can legally "waive" a rest or meal break;

- whether a policy of compensating for missed rest breaks is legal; and

- whether a missed meal break is compensable.

¶ 29    It then performed the C.R.C.P. 23(b)(3) predominance analysis for each theory. Addressing meal breaks first, the court reasoned that the absence of a recorded break did not constitute proof that Colorado Hamburger violated the COMPS Order; after all, it may have provided the employee with the opportunity to eat an on-the-

clock meal — an action consistent with the regulation. Without a common means of proving liability or damages (i.e., the timesheets), the court would be required to conduct individualized inquiries into the circumstances of each meal break for each employee. The individualized questions would therefore predominate over the common ones, rendering class certification inappropriate.

¶ 30 The court then turned to rest breaks, noting that

> [t]here were statements from employees who variously advised they did and did not take rest breaks, and that they were and were not compensated for rest breaks. There is also evidence that employees who did take rest breaks did not always document that fact by using Defendant's timekeeping system.

Significantly, the court did not reference the specific statements or the relevant portions of the record underpinning that conclusion.

¶ 31 From this threshold conclusion, the court reasoned that a missing rest break on a timesheet did not mean that an employee was deprived of one; instead, the employee could have voluntarily "waived" their break or forgotten to record it. For this reason, the timesheets could not be used to prove liability or damages. And, in the absence of a common method of proof, both would require innumerable individualized inquiries that would predominate over

15

the common issues. Accordingly, the court reasoned that class certification was likewise inappropriate on the rest break theory.

## B. Analysis: Meal Breaks

¶ 32 Although we recognize that Hicks' meal break theory of liability implicates several common issues of law and fact, we agree with the district court that the shared issues do not predominate over the individual ones.

¶ 33 Our conclusion centers on the absence of a viable class-wide theory of proving liability or damages. *Benzing*, 206 P.3d at 820. As the district court recognized, a missing meal break on a timesheet does not mean that Colorado Hamburger violated the COMPS Order, Rule 5.1, 7 Code Colo. Regs. 1103-1. Instead, a missing meal break could be one of two things: (1) the manager did not provide the option to eat an on-the-clock meal (and thus violated the regulation) or (2) the manager provided the opportunity to eat a meal of choice on the clock and thus comported with the regulation. *See id.*

¶ 34 To prove liability and damages on their meal break theory, class plaintiffs would have to show that, for each missed meal break, the manager did not provide that employee with the option to

16

have an on-the-clock meal.  Because the timesheets are not probative of this fact, individualized evidence would be necessary to prove both liability and damages.

¶ 35    Such individualized inquiries would predominate over the common issues.  *See Garcia,* 263 P.3d at 99-102 (reversing class certification because of need for class-wide individualized inquiries); *see also* 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:50, Westlaw (6th ed. database updated Dec. 2022) (noting that common questions do not predominate if, "as a practical matter, the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues" and collecting cases on this point) (citation omitted).  Because the individualized inquiries required to prevail on the meal break theory predominate over the common issues it implicates, Hicks fails to satisfy C.R.C.P. 23(b)(3).

## C.    Analysis: Rest Breaks

¶ 36    We reach the opposite conclusion with respect to Hicks' rest break claim.  Our holding is based on the fact that, in contrast to meal breaks, the timesheets provide a viable class-wide means of

17

proving liability and damages for the failure to authorize and permit rest breaks. *See Benzing*, 206 P.3d at 820.

¶ 37    In reaching its conclusion that class certification was inappropriate on Hicks' rest break theory, the district court noted that a class-wide inference was impermissible because a missed rest break could mean that employees waived their break or failed to record it. In so doing, the court misapplied the law. *See Jackson*, 262 P.3d at 880. Indeed, our review of the record shows that Colorado Hamburger offered little evidence to support these theoretical possibilities, and, to the extent its countervailing evidence calls into question the timesheets as class-wide proof, such doubts can be resolved through circumstantial evidence, thereby preserving the possibility of the class-wide inference.

¶ 38    Recall that in support of its waiver theory, Colorado Hamburger offered affidavits from seventy employees who uniformly stated that, "[i]n my experience, and based on my observations, if an employee does not take a rest break, that is solely their own choosing." Hicks sought to rebut this blanket assertion with circumstantial evidence, including evidence that the restaurants were understaffed and that a rational fast-food worker would not

choose to work — for no additional compensation — instead of taking a ten-minute compensated break. He also offered hard data that, after the lawsuit was filed, the number of missed rest breaks (of the seventy affiants) plummeted by approximately 93 percent the following year (from 10,022 to 640). *Supra* Part I.

¶ 39 C.R.C.P. 23(b)(3) only requires that Hicks "advance[] a *theory* by which to prove or disprove 'an element on a simultaneous, class-wide basis.'" *Benzing*, 206 P.3d at 820 (emphasis added) (citation omitted). His theory is that liability and damages can be inferred from the timesheets, and that Colorado Hamburger's counterargument that the workers voluntarily waived their break can be disproven (or proven) to a jury vis-a-vis circumstantial evidence. *See Garcia*, 263 P.3d at 100-01 (discussing this evidentiary framework within which a defendant may defeat a class-wide inference).

¶ 40 Contrary to the district court's conclusion, Hicks' theory survives C.R.C.P. 23(b)(3). *See Jackson*, 262 P.3d at 880-81. Depending on the totality of the evidence produced at trial, it is possible that a jury could reasonably conclude that an individual earning minimum (or near-minimum) wage would voluntarily

19

continue working instead of receiving a ten-minute compensated break. But a jury could also reasonably conclude that managers were unable or unwilling to authorize such breaks because of staffing decisions. This latter explanation is particularly compelling given the empirical evidence: after Colorado Hamburger was sued for failing to provide rest breaks, its employees effectively ceased "waiving" their breaks. This dramatic shift supports an inference that the employees were probably not waiving their rest breaks to begin with.

¶ 41    We are similarly unpersuaded by the argument that, because employees may have forgotten to record their break, the timesheets cannot be used to infer liability. The vast majority of the evidence probative of this point comes from Colorado Hamburger itself — specifically, its policy requiring employees to clock in and out for rest breaks, combined with its seventy affidavits from employees stating that they *always* clock in and out for rest breaks. Thus, rather than rebutting Hicks' argument that the timesheets can support the class-wide inference, Colorado Hamburger's evidence bolsters that inference.

¶ 42    To be sure, Hicks' deposition statement that he sometimes forgot to clock in and out for a break could theoretically rebut the inference. But the significance of this statement is unclear; indeed, Hicks noted that he always asked his manager to fix his timesheet, which he believes the manager did. It is therefore plausible that the manager fixed any errors in the timesheets, thus ensuring the accuracy of the timesheets (i.e., all rest breaks were recorded). In any event, Hicks' ambiguous deposition statement does not show that employees routinely forgot to record their breaks, especially in light of Colorado Hamburger's affidavits from seventy employees stating that they always record their breaks. *See State Farm Mut. Auto. Ins. Co. v. Reyher*, 266 P.3d 383, 387-89 (Colo. 2011) (discussing evidence sufficient to undermine a class-wide inference).

¶ 43    Nor are we convinced by Colorado Hamburger's contention that, even if employees did not receive a rest break, we can presume they were compensated for it on the back end. Aside from Hicks' ambiguous statement in his deposition, Colorado Hamburger provides no evidence to support this assertion. Such a bald claim is insufficient to rebut Hicks' substantial evidence supporting the class-wide inference. *See Garcia*, 263 P.3d at 100-01.

21

¶ 44    Three other considerations undergird our conclusion that Hicks satisfies the requirements of C.R.C.P. 23(b)(3).

¶ 45    First, Hicks plans to use a paradigmatic type of evidence to prove liability and damages: employee timesheets. *See* Rubenstein, § 4:50 (observing that common issues will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria — thus rendering unnecessary an evidentiary hearing on each claim") (citation omitted). For example, the United States District Court for the District of Colorado certified a substantially similar class for the same reason. *See Sobolewski v. Boselli & Sons, LLC*, No. 16-cv-01573, 2018 WL 3838140, at *3 (D. Colo. June 13, 2018) (unpublished opinion) (rejecting employer's argument that payroll records could not support a class-wide inference and noting that "[e]lectronic payroll records that are available for every member of the proposed class is the precise type of generalized proof that makes a class action more efficient than an individual action").[4]

---

[4] To be sure, the court in *Sobolewski v. Boselli & Sons, LLC*, No. 16-cv-01573, 2018 WL 3838140, at *4 (D. Colo. June 13, 2018), certified a class for the alleged deprivation of meal breaks. But the

22

¶ 46    Second, our jurisprudence favors class certification.  Injuries like those Hicks alleged would not be economically viable on an individual basis.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (explaining that class actions allow parties to aggregate "relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor") (citation omitted); *see also* Scott A. Moss & Nantiya Ruan, *The Second-Class Class Action: How Courts Thwart Wage Rights by Misapplying Class Action Rules*, 61 Am. U. L. Rev. 523, 560-64 (2012) (discussing the types of injuries that class actions are uniquely able to address).  Providing Hicks' proposed class the opportunity to prove that they were deprived of rest breaks is fundamentally consistent with the purpose of C.R.C.P. 23.  *See Jackson*, 262 P.3d at 880-81; *Benzing*, 206 P.3d at 817-18.

¶ 47    Third, class certification is conditional.  If Colorado Hamburger submits evidence undermining the viability of the timesheets as a class-wide means of proof, the district court retains

---

plaintiff's claim there — that the employer's policy effectively compelled employees to clock in early from their lunch break — is materially different than the claim Hicks advances here.

the discretion to decertify the class.  *See Jackson*, 262 P.3d at 881-84 (examining the conditional nature of class certification).

¶ 48     In sum, we conclude that, applying governing legal principles, Hicks satisfies the requirements of C.R.C.P. 23(b)(3) for his rest break theory.  Because the district court determined that his proposed class satisfies the requirements of C.R.C.P. 23(a), sufficient evidence exists to certify a class on the rest break theory.

## V.   Conclusion

¶ 49     The district court's order is affirmed with respect to its conclusion regarding meal breaks and reversed with respect to its conclusion regarding rest breaks.  Accordingly, the case is remanded with directions to certify the proposed class on Hicks' rest break claim, and to conduct further proceedings consistent with this opinion.

    JUDGE TOW and JUDGE YUN concur.